UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 24-1592-KK-SPx** | Date: | October 16, 2024 |
|---|---|---|---|
| Title: | *Heather Parker v. Lendmark Financial Services, LLC, et al.* | | |

| Present: The Honorable | KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE |
|---|---|

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (In Chambers) Order GRANTING Plaintiff's Motion to Remand [Dkt. 12]

## I. INTRODUCTION

On June 26, 2024, plaintiff Heather Parker ("Plaintiff") filed a class action Complaint in the Superior Court of California, County of Los Angeles, alleging wage and hour violations against defendant Lendmark Financial Services, LLC ("Defendant"). ECF Docket No. ("Dkt.") 1-1, Complaint ("Compl."). On July 29, 2024, Defendant filed a Notice of Removal to this Court. Dkt. 1. On August 27, 2024, Plaintiff filed a Motion to Remand ("Motion"). Dkt. 12.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

## II. BACKGROUND

### A. PROCEDURAL HISTORY

On June 26, 2024, Plaintiff filed the operative Complaint in Los Angeles Superior Court on behalf of herself and other non-exempt employees alleging California Labor Code and California Business and Professions Code violations based on: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) meal period violations; (4) rest period violations; (5) wage statement

violations; (6) waiting time penalties; (7) failure to provide personnel records; and (8) unfair competition.  Compl. at 13-20.

On July 26, 2024, Defendant filed an Answer.  Dkt. 1-6, Exhibit F.

On July 29, 2024, Defendant filed a Notice of Removal asserting jurisdiction pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1441(a) and (b), and 28 U.S.C. § 1446.  Dkt. 1.  In support of its Notice of Removal, Defendant filed a declaration by Kelley Daviss ("Daviss"), Defendant's Executive Vice President of Human Resources, Corporate Communications, and Corporate Security.  Dkt. 1-7, Declaration of Kelley Daviss ("Daviss Decl."), ¶ 2.

On August 27, 2024, Plaintiff filed the instant Motion arguing Defendant fails to establish jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") because Defendant does not meet its burden by a preponderance of the evidence that the amount in controversy satisfies CAFA due to Defendant using violation rates that are not rooted in evidentiary support.  Dkt. 12-1.

On September 12, 2024, Defendant filed an Opposition to Plaintiff's Motion, arguing it has satisfied its burden to establish removal is proper.  Dkt. 19.  In support of its Opposition, Defendant filed a second declaration from Daviss.  Dkt. 19-1, Second Declaration of Kelley Daviss ("Second Daviss Decl.").

On September 17, 2024, Plaintiff filed a Reply.  Dkt. 20.  This matter, thus, stands submitted.

**B.     RELEVANT FACTS**

As alleged in the Complaint, Defendant is a commercial lender in the business of selling loans.  Compl. ¶ 1.  Plaintiff was employed as a non-exempt Branch Manager at Defendant's office in Torrance, California, from 2017 to January 10, 2024.  Compl. ¶ 21.  Plaintiff and other non-exempt employees "regularly worked various shifts, many of which were more than 8.0 hours in a workday and 40.0 hours in a workweek.  Compl. ¶ 22.  Defendant "at times, failed to properly calculate and pay overtime wages . . ."  Compl. ¶ 23.

Defendant also "maintained policies and practices that forced Plaintiff and other non-exempt employees, at times, to work through meal periods while off-the-clock as well as before and after work shifts."  Compl. ¶ 26.  Further, Plaintiff claims "Plaintiff and other non-exempt employees, at times, were denied compliant and timely 30-minute off duty meal periods[.]"  Compl. ¶ 30.

"Plaintiff and other non-exempt employees, at times, were, and are, often unable to take a net 10-minute duty-free rest period[.]"  Compl. ¶ 33.

Plaintiff alleges Defendant "at times, failed in its obligation to provide Plaintiff and other non-exempt employees the legally required paid sick days at the legal rate," and "paid sick time below the 'regular rate of pay[.]'"  Compl. ¶¶ 27, 29.

Plaintiff also claims Defendant "failed at times, to pay all overtime, sick pay wages, and meal and rest period premiums at the 'regular rate of pay' . . . [and] failed to pay Plaintiff and other non-exempt employees all wages owed at her time of separation from employment[.]"  Compl. ¶ 39.

Defendant provides two declarations by Daviss in support of removal.  Dkts. 1-7, 19-1.  According to Daviss, after reviewing Defendant's files, "Defendant employed at least 316 nonexempt employees in California between September 30, 2020, and the present (the "Putative Class Members"), 136 of which are former employees."  Daviss Decl., ¶ 10.  "The Putative Class Members" worked "an average of 114.62 workweeks during the class period[,]"[1] but in total, "worked approximately 36,220 estimated workweeks."  Daviss Decl., ¶ 11.  Regarding the class members' wage, the "average hourly rate of the 5,277 Putative Class Members, including Plaintiff, during the class period was $28.53."[2]  Daviss Decl., ¶ 12.  Defendant "typically hired non-exempt employees in the state of California to work a full-time schedule of 40 hours per week, which generally consists of up to five 8-hour shifts per week."  Second Daviss Decl. ¶ 4.

## III.
## LEGAL STANDARD

Any civil action brought in state court of which the district courts of the United States have original jurisdiction may be removed to the district court of the United States for the district where such action is pending.  28 U.S.C. § 1441(a).  However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

CAFA vests federal courts with original diversity jurisdiction over class actions where: (1) there are at least 100 class members; (2) any class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5,000,000.  Brinkley v. Monterey Fin. Servs., Inc., 873 F.3d 1118, 1121 (9th Cir. 2017) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."  Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court."  Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).

The statute was designed "to be interpreted expansively."  Id. (citing S. Rep. No. 109-14, at 42 (Feb. 28, 2005)); see also Jauregui v. Roadrunner Transp. Servs., Inc., 28 F.4th 989, 992-93 (9th Cir. 2022) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014)) ("CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").  Thus, while "a presumption against federal jurisdiction exists in the usual diversity case, no antiremoval

---

[1] It is unclear if the "Putative Class Members" estimated work weeks are based on 316 non-exempt employees during the class period or the estimated 5,227 "Putative Class Members" Daviss identifies later in her declaration.  See dkt. 1-7.

[2] Based on Daviss' declaration, the average hourly rate is based on the rate of 5,227 employees, not 316 employees.  See dkt. 1-7.

presumption attends cases invoking CAFA." Greene v. Harley-Davidson, Inc., 965 F.3d 767, 772 (9th Cir. 2020).

## IV.
## DISCUSSION

A.  **The Putative Class Size Is at Least 100 Members**

   1.  **Applicable Law**

   There must be at least 100 class members to satisfy diversity jurisdiction under CAFA. Brinkley, 873 F.3d at 1121 (citing 28 U.S.C. § 1332(d)(2), (5)(B)). Allegations in a complaint that claim at least 100 class members are considered judicial admissions binding on a plaintiff. See Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.").

   2.  **Analysis**

   Here, Plaintiff does not dispute that the putative class is at least 100 members. Dkt. 12-1 at 7. Additionally, the Complaint alleges the class "consists of at least one hundred (100) individuals." Compl. ¶ 42. Accordingly, there is sufficient evidence to conclude there are at least 100 class members.

B.  **Minimal Diversity Exists Between Plaintiff and Defendant**

   1.  **Applicable Law**

   The federal diversity jurisdiction statute provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" is its "nerve center" – it is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010). "A corporation's 'nerve center' . . . is a single place." Id. at 93. It will "normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]" Id.

   2.  **Analysis**

   Here, Plaintiff does not dispute minimal diversity exists between Plaintiff and Defendant. See 12-1. Plaintiff is a citizen of California. Compl. ¶¶ 10, 13; Daviss Decl., ¶ 4. Defendant is incorporated in Georgia, with its principal place of business in Georgia. Dkt. 1-7 at 2. Defendant is an LLC with 26 members. Dkt. 1-7 at 2. None of the individual members are domiciled in California, and none of the entity members have their principal place of business in California, nor are they incorporated in California. Dkt. 1-7 at 2. Hence, Defendant is a citizen of Georgia.

Accordingly, because Plaintiff is a citizen of California and Defendant is a citizen of Georgia, minimal diversity exists.

**C.     The Amount in Controversy Does Not Exceed $5,000,000.**

**1.     Applicable Law**

A plaintiff "can contest the amount in controversy by making either a 'facial' or 'factual' attack on defendant's jurisdictional allegations." Harris v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (quotations and citation omitted). A factual attack "contests the truth of [defendant's] allegations[.]" Salter v. Quality Carriers, Inc., 974 F.3d 959, 965 (9th Cir. 2020) (citation omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Harris, 980 F.3d at 699 (citing Ibarra, 775 F.3d at 1197). Where a plaintiff contests defendant's amount in controversy allegation, "both sides 'may submit proof and the court decides, by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied.'" Salter, 974 F.3d at 963 (quoting Dart, 574 U.S. at 88). However, when making a factual attack, plaintiff need only "challenge the truth of defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." Harris, 980 F.3d at 700.

To determine the amount in controversy, "courts first look to the complaint" and generally find the "sum claimed by the plaintiff controls if the claim is apparently made in good faith." Ibarra, 775 F.3d at 1197 (citation and internal quotation marks omitted). Where the amount in controversy is unclear or ambiguous from the face of the state-court complaint, "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds [5 million]." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007) (internal quotation marks and citation omitted).

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Harris, 80 F.3d at 701 (quoting Ibarra, 775 F.3d at 1198). "[T]he removing party must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable." Jauregui, 28 F.4th at 993 (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1201 (9th Cir. 2015)). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra, 775 F.3d at 1197.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra, 775 F.3d at 1197 (internal quotation marks and citation omitted). Courts have accepted "declarations from human resources professionals" that provide details including average hourly rates and total number of workweeks "as credible evidence to establish CAFA removal." Alvarez v. Off. Depot, Inc., No. CV-17-7220-PSG-AFMx, 2017 WL 5952181, at *2 (C.D. Cal. Nov. 30, 2017). A court "should weigh the reasonableness of the removing party's assumptions, not

supply further assumptions of its own." Harris, 980 F.3d at 701. "After considering any evidence put forth by the parties, and assessing the reasonableness of the defendant's assumptions, 'the court then decides where the preponderance lies.'" Id. (quoting Ibarra, 775 F.3d at 1198).

**2.     Analysis**

In calculating the amount in controversy, Defendant relies on Daviss' conclusions and focuses on three categories of violations: (1) failure to provide meal breaks, (2) failure to provide rest periods, and (3) waiting time penalties.[3] See dkts. 1, 19. Plaintiff does not provide any alternative calculations for the amount in controversy nor supplies evidence to contradict the amount in controversy.[4] However, given that Plaintiff is making a factual attack, Plaintiff is not required to provide evidence, only a reasoned argument that Defendant's assumptions are not supported by evidence. See Harris, 980 F.3d at 700.

As an initial matter, the Court finds the declarations of Daviss to be competent evidence in support of Defendant's amount in controversy arguments. Dkts. 1-7, 19-1. Both declarations demonstrate Daviss reviewed relevant personnel and payroll records to reach her conclusions regarding the number of non-exempt employees and former employees, the average number of workweeks worked by class members during the class period, the average hourly rate of the class members, and Defendant's practice of hiring non-exempt employees in California and scheduling them full-time. See id. While Plaintiff argues Daviss' declaration "contains bare bones and conclusory information with respect to the number of total employees, former employees, and workweeks[,]" Plaintiff provides no evidence to contradict her records, analytics, or conclusions. See dkt. 12-1 at 15-16. Thus, the Court accepts Daviss' declarations providing details about class members' workweeks and average hourly rate as "credible evidence" to support Defendant's arguments. Alvarez, 2017 WL 5952181, at *2.

As discussed below, however, the Court does not find sufficient evidence to support Defendant's assumed estimates and violation rates. Thus, the Court finds Defendant has not met its burden to establish the amount in controversy exceeds $5,000,000.

**a.     Meal Period Violations**

With respect to meal period violations, Defendant assumes a 60% violation rate based on Plaintiff's allegation in the Complaint that class members "often could not take timely and uninterrupted net 30-minute first meal periods before the end of the of the fifth hour of work." Compl. ¶ 30. Defendant bases its entire violation rate and calculation on Plaintiff's use of the word "often." See dkt. 19 at 6-8. Defendant cites to Miriam-Webster dictionary as "often" being "defined as 'frequently' or 'many times.'" Dkt. 19 at 6-7. However, Defendant provides no other

---

[3] The Court notes Defendant does not include the remaining five causes of action or attorney's fees in its amount in controversy calculation.

[4] Plaintiff contends "[h]ad Defendant produced time records for Plaintiff Heather Parker in response to her request for personnel records, Plaintiff might have also been able to refute Defendant's assumption utilizing her own records." Dkt. 12-1 at 9.

evidence that the assumption "that each putative class member missed a meal . . . break 3 times out of 5, i.e. more than 50% of the shifts per week is more than reasonable." Dkt. at 19.

The Court is not persuaded by Defendant's argument or unsupported assumption. The Court cannot reasonably assume that "often" equates to a 60% violation rate without supporting evidence that said violations occurred a majority of the time or more often than not. Additionally, there is no language in the Complaint from which the Court can conclude this level of frequency, and Defendant does not provide competent evidence from which the Court could find such a high rate of violations.

Accordingly, the Court finds Defendant's amount in controversy for meal period violations by calculating employees' average hourly rate, multiplied by an assumed 60% violation rate, multiplied by 36,220 workweeks to be unreasonable.[5] Basile v. Aaron Bros., Inc., No. 17-cv-485-L, 2018 WL 655360, at *2 (S.D. Cal. Feb. 1, 2018) (finding that allegations of defendant's pattern and practice to violate the law may indicate "violations were regular," however, that "do[es] not speak to their frequency, and are therefore insufficient to support the assumption of any particular rate violation."). Thus, the Court concludes Defendant has not met its burden by a preponderance of the evidence, justifying its estimate for meal period violations.

### b. Rest Period Violations

With respect to rest period violations, Defendant also assumes a 60% violation rate based on Plaintiff's claims that class members "at times, were, and are, often unable to take a net 10-minute duty-free rest period for every major fraction of four hours worked." Compl. ¶ 33. Once again, Defendant bases the 60% violation rate on Plaintiff's use of the word "often" and cites the Miriam-Webster dictionary definition. Dkt. 19 at 7-8. Once again, Defendant provides no other evidence to support Defendant's assumption "that Plaintiff is seeking to recover rest period premiums for 3 out of the 5 days in each work week . . ." Dkt. 19 at 8.

Accordingly, for purposes of calculating the amount in controversy at this stage, the Court finds Defendant's amount in controversy for rest period violations using employees' average hourly rate, multiplied by an assumed 60% violation rate, multiplied by 36,220 workweeks to be unreasonable.[6] Thus, the Court concludes Defendant has not met its burden by a preponderance of the evidence, justifying its estimate for rest period violations.

### c. Waiting Time Penalties

With respect to waiting time penalties, Defendant assumes a 100% violation rate and that each class member will recover their regular hourly rate of pay for 30 days, the maximum number of days allowed under California Labor Code Section 203.[7] Dkt. 1 at 9. In the Notice of Removal,

---

[5] Based on this calculation, Defendant claims meal period violations amount to $3,100,070.

[6] Based on this calculation, Defendant claims rest period violations amount to $3,100,070.

[7] The amount in controversy for this claim is: $931, 219.20 [136 former employees during the Class Period x $28.53 average hourly rate during the Class Period x 8 hours per day x 30 days]. Dkt. 1 at 9.

Defendant conclusively states, "it is a reasonable inference that all of the [136][8] putative class members who are former employees are owed waiting time penalties at the average hourly rate during the Class Period for the maximum penalty of thirty days of wages." Dkt. 1 at 8. However, Defendant does not provide evidence to support this assumption. Instead, Defendant cites Naranjo v. Spectrum Sec. Servs., Inc., 13 Cal. 5th 93 (2022) to support its assumption, whereby the California Supreme Court held that waiting time penalties are available premium pay owed to employees denied meal or rest breaks under California Labor Code Section 203. Dkt. 1 at 8. Defendant also argues Plaintiff did not provide limiting language for this allegation and instead alleges Defendant "failed timely to pay all final wages upon separation from employment in violation of Labor Code section 201-203." Compl. ¶ 3. However, this argument is misleading, given Defendant pulls this language from the Complaint's introduction paragraph, and Plaintiff does provide limiting language under the sixth cause of action regarding waiting time penalties, claiming "Defendant[] *at times* failed . . ." to pay final wages upon separation. Compl. ¶ 91 (emphasis added).

Defendant's calculations are neither supported by facts nor by Plaintiff's Complaint. Defendant simply assumes every separated non-exempt employee was denied the payment of final wages upon separation for the maximum number of days under the statute. Yet, Defendant fails to present evidence that such assumptions are based on reviewing personnel files, time records, and payroll history – records to which Defendant has access. Though Defendant need not prove Plaintiff's case, Defendant must provide competent evidence for which this Court can conclude that Defendant's "reasoning and underlying assumptions are reasonable[,]" Jauregui, 28 F.4th at 993.

In the absence of competent evidence to support an assumed 100% violation rate, the Court is not persuaded by Defendant's arguments. Cf. Ibarra, 775 F.3d at 1198-99 (finding that even where a complaint alleged "pattern and practice" of committing violations, such an allegation "does not mean that such violations occurred in each and every shift"); see also Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013) (rejecting defendants' assumption that each employee would be entitled to the maximum penalty because defendants do not provide evidence to support that assertion).

Accordingly, for purposes of calculating the amount in controversy at this stage, the Court finds Defendant's amount in controversy for waiting time penalties by assuming all 136 former employees are seeking full pay for 30 days to be unreasonable. Thus, the Court concludes Defendant has not met its burden by a preponderance of the evidence, justifying its estimate for waiting time penalties. Jauregui, 28 F.4th at 996 ("Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden.").

### d. Attorney's Fees

Attorney's fees must be included in the amount in controversy calculation. Fritsch v. Swift Transp. Co. of Arizona, LLC, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [plaintiff]

---

[8] Defendant includes all 316 class members in this sentence, when it should only apply to the class members who have separated from employment with Defendant which is 136 former employees. Dkt. 1 at 8.

to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.").

Here, Defendant does not include an attorney fee recovery in its amount in controversy calculation.  See dkts. 1 at 9, 19 at 11.  Defendant acknowledges that they "could have included attorneys' fees of 25% for a class recovery[.]"  Dkt. 19 at 11.  However, Defendant claims they "did not incorporate these additional factors," thus "further demonstrate[ing] that Defendant's amount in controversy calculations are supported by reasonable assumptions."  Id.

Accordingly, since Defendant does not provide a fee recovery, nor include one in its amount in controversy, the Court cannot conclude whether such a recovery fee is reasonable.

\* \* \*

Ultimately, the Court finds, as other courts in this district have held, it is unreasonable for Defendant to rely almost entirely on unsupported assumptions to establish an amount in controversy.  See Armstrong v. Ruan Trans. Co., No. 5:16-cv-1143-VAP-SPx, 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25, 2016); Garibay v. Archstone Comtys. LLC, No. 2:13-cv-10640-PA-VBKx, 2013 WL 12157241, at *5-6 (C.D. Cal. Feb. 4, 2013), aff'd No. 13-56151, 539 F. App'x 763 (9th Cir. 2013); Whitaker v. U.S. Renal Care, Inc., No. 2:17-cv-2661-R, 2017 WL 3412203, at *2 (C.D. Cal. Aug. 8, 2017); Weston v. Helmerich & Payne Int'l Drilling Co., No. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *6 (C.D. Cal. Sept. 17, 2013); Munoz v. Central Parking Sys., Inc., No. 2:10-cv-6172, 2010 WL 3432239, at *2 (C.D. Cal. Aug. 20, 2010).  Accordingly, Defendant has not met its burden to show by a preponderance of the evidence that the amount in controversy reasonably exceeds $5,000,000.  Garibay, 539 F. App'x 763, 764 (affirming a district court's ruling that defendants' evidence was insufficient to support removal jurisdiction under CAFA where defendants' "only evidence" to support their amount in controversy "is a declaration by their supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages").

## IV.
## CONCLUSION

For the foregoing reasons, the Court finds Defendant has not met its burden to prove that removal in this case is proper.  Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand, and this matter shall be remanded to state court.  (JS-6)

**IT IS SO ORDERED.**